UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES – GENERAL

Case No. CV 17-7965-DOC (JDEx)                                     Date: April 25, 2018

Title: ROBERT OZERAN ESQ V. ROBIN JACOBS ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None Present | None Present |

PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [12] [28] AND REMANDING CASE

Before the Court are Defendants Fari Rezai ("Rezai"), Dennis Fusi ("Fusi"), Robin Jacobs ("Jacobs"), and John Jansen's ("Jansen") (collectively, "Jacobs Defendants") Motion to Dismiss ("Jacobs Motion") (Dkt. 24) and Defendant Jorge Humberto Reyes's ("Reyes") Motion to Dismiss ("Reyes Motion") (Dkt. 12). The Court finds these matters appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers and considered the parties' arguments, the Court GRANTS Defendants' Motions. Further, the Court sua sponte REMANDS this case to the Superior Court of California, County of Los Angeles.

I.    Background

A.    Facts

The Court draws the following facts from the operative pleading, Plaintiff Robert Ozeran Esq.'s ("Ozeran" or "Plaintiff") First Amended Complaint ("FAC") (Dkt. 1-7). The facts and circumstances of this civil suit arise from the same facts and circumstances

described in a June 5, 2017, California felony complaint in *People v. Castro*, Case No. 17CF1372 ("OCDA Complaint"). FAC ¶ 15.

      Plaintiff is a Southern California attorney who represents injured workers before the California Workers Compensation Appeals Board. *Id*. ¶ 16. Plaintiff's business operations "include multiple methods of advertisement in order to attract new clients." *Id*. ¶ 17. Plaintiff's "advertisements include print, internet, radio, public festivals, and community events, as well as the use of legal advertisement companies such as '1-800-The-Law-2.'" *Id*. ¶ 18.

      Defendants allegedly are Plaintiff's "competitors in Plaintiff's geographic area and field of legal practice." *Id*. ¶ 19. Plaintiff contends that Defendants utilized "illegal practices in order to secure clients for which Plaintiff competes." *Id*. ¶ 19. Defendants are: (1) Robin Jacobs, Esq., dba The Law Offices of Robin Jacobs, a California Company; (2) Robert Irvine Slater, Esq. dba The Law Offices of Robert Slater Inc., a California Law Company; (3) Rony M. Barsoum, Esq. dba Barsoum Law, a California Professional Law Corporation; (4) Jorge Humberto Reyes, Esq. dba Jorge H. Reyes, Inc. a California Company; (5) Dennis Ralph Fusi, Esq. dba The Law Offices of Dennie R. Fusi & Associates, a California Law Corporation; (6) Lionel Eduardo Giron, Esq., dba The Law Offices of Lionel Giron, a California Professional Corporation; (7) Fari Rezai, Esq., dba Reszai & Associates, a California Professional Corporation; (8) John Jansen Esq., dba G. John Jansen & Associates, a California Professional Law Corporation; (9) Payman Zargari, Esq., dba Law Offices of Payman Zargari, a California Professional Law Corporation; and (10) Jon Woods, Esq., dba the Law Offices of Jon M. Woods, Inc., a California Company. *Id*. ¶¶ 2–11.

      In the OCDA Complaint, Carlos Arguello III ("Arguello")—not party to this suit—was accused of "forming Centro Legal Internacional, an 'advertising' company, and securing unlawful referral contracts with 20 to 40 worker's compensation insurance and personal injury attorneys." *Id*. ¶ 20. Arguello is accused of creating an illegal workers compensation insurance referral, or "capping," scheme. *Id*. ¶ 26. Defendants in this case "are accused of paying a monthly fee for 'cappers' to procure and deliver an agreed upon minimum number of retained clients per month." *Id*. The cappers are accused of "distributing flyers and business cards in predominately Hispanic neighborhood businesses, swap meets, and the U.S.-Mexico border." *Id*. ¶ 26. Defendants are accused of "using copy services owned or controlled by Cappers and authorizing staff from various copy companies run by the Cappers to inspect the attorneys' client files for information to prepare copy service orders for subpoenaing records." *Id*. ¶ 32. In addition, Defendants are accused of "permitting Cappers to order, prepare, and submit documents on behalf of the attorney without attorney oversight or approval in violation of

law." *Id*. ¶ 33. The OCDA complaint alleges that more than "33,000 workers were illegally 'capped' during Defendants' multiple year scheme." *Id*. ¶ 37.

Plaintiff alleges that Defendants engaged "in illegal marketing and capping [activities] in areas [in] which Plaintiff had consistently advertised." *Id*. ¶ 38. As a result, Plaintiff alleges that he has "suffered damages in relation to the diminished value of his advertisement" and a "drop in clients that otherwise would have been represented by Plaintiff's law firm absent Defendants' misconduct." *Id*.

### B.     Procedural History

On June 9, 2017, Plaintiff filed his Complaint (Dkt. 1-1) in the Superior Court of the County of Los Angeles. On October 5, 2017, Plaintiff filed his First Amended Complaint ("FAC") (Dkt 1-7). In his FAC, Plaintiff brings three claims: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, et. seq. (2) negligence; and (3) Civil Racketeering in violation of 18 U.S.C. 1961 et. seq. ("civil RICO"). FAC ¶¶ 44–56. On October 31, 2017, Defendants removed this case from Superior Court to this Court. *See* Not. Rem. (Dkt 1).

On November 7, 2017, Defendant Reyes filed his Motion to Dismiss Plaintiff's FAC ("Reyes Motion"). On December 7, 2017, Jacobs Defendants filed their Motion to Dismiss ("Jacobs Motion"). Defendants ask the Court to dismiss all three of Plaintiff's claims. *See generally* Reyes Motion; Jacobs Motion. On December 18, 2017, Plaintiff filed his Opposition to Reyes' Motion to Dismiss ("Opp'n to Reyes") (Dkt. 31) and his Opposition to Jacobs Defendants' Motion to Dismiss ("Opp'n to Jacobs") (Dkt. 32). On December 22, 2017, Jacobs Defendants submitted their Reply ("Jacobs Reply") (Dkt. 33). Defendant Reyes did not submit a Reply.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek*, 519 F.3d at 1031. A

court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the Court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). Courts may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

For claims sounding in fraud, a complaint must be dismissed when a plaintiff fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see* Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff alleging such claims to "state with particularity the circumstances constituting fraud." *Id.* The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *U.S. ex rel. Cafasso*, 637 F.3d 1047, 1055 (9th Cir. 2011). Further, if the plaintiff claims a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false*.*" *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). In other words, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). This heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Dismissal without leave to amend is

appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### III.   Discussion

Defendants ask the Court to dismiss all three of Plaintiff's claims for violation of the UCL, negligence and civil RICO on the grounds that Plaintiff fails to state a claim upon which relief can be granted. *See generally* Reyes Motion; Jacobs Motion. The Court will address each claim in turn.

####   A.   UCL Claim

First, Defendants ask the Court to dismiss Plaintiff's first claim brought under the UCL. Jacobs Mot. at 15–19; Reyes Mot. at 5–9. Defendants argue that Plaintiff fails to state a claim under the UCL for three reasons: (1) Plaintiff lacks statutory standing to bring a claim under the UCL; (2) Plaintiff only seeks relief in the form of monetary damages, which is not an available form of relief under the UCL; and (3) Plaintiff fails to allege a violation with the requisite particularity. Jacobs Mot. at 15–19; Reyes Mot. at 5–9. Defendant Reyes further argues that "Plaintiff's lawsuit is a 'shakedown lawsuit' . . . brought by a person who has had no business dealings with the proprietor being sued, but who has happened to notice the hapless proprietor is out of compliance with the law," which Defendant claims is exactly the type of lawsuit the UCL seeks to preclude. Reyes Mot. at 8. Plaintiff argues that his UCL claim is sufficiently pled because his allegations of diminished market share are sufficient to satisfy the UCL's standing requirements. Opp'n to Jacobs at 15–16. Further, Plaintiff argues that he has requested restitution and that the Court may award "restitution to [a] third party with no contractual or statutory interest in the illicit profits generated by defendants." Opp'n to Reyes at 8.

The purpose of the UCL is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Sup. Ct.,* 51 Cal. 4th 310, 320 (2011) (internal quotations omitted). The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "[The UCL] thereby 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107 n.1 (9th Cir. 2013) (internal quotations omitted). The California Supreme Court has explained that the UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal citation and quotation marks omitted). In other words "[e]ach prong of the UCL

is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Under the "unlawful" prong, the UCL incorporates other state laws, and violations of those laws are independently actionable. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). The "unfair" prong addresses business practices that "offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001). Lastly, the "fraudulent" prong of the UCL prohibits business practices if "members of the public are likely to be deceived." *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

First, Defendants argue that the Court should dismiss Plaintiff's UCL claim because Plaintiff fails to meet the standing requirements set forth by the Supreme Court of California in *Kwikset*, 51 Cal. 4th at 320–22. *See, e.g.*, Jacobs Mot. at 17–19. In *Kwikset*, the California Supreme Court, following the amendment of the UCL via Proposition 64, considered what standing was necessary to bring a claim under the UCL. *Kwikset,* 51 Cal. 4th at 320–21. The California Supreme Court explained that Prop 64 heightened the standing requirements for those seeking to bring a claim under the UCL:

> In 2004, the electorate substantially revised the UCL's standing requirement, where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" . . . now private standing is limited to any "person who has suffered injury in fact and has lost money or property" and a result of unfair competition.

*Id*. at 320–21 (quoting Cal. Bus. & Prof. Code § 17204). Thus, to bring a UCL claim, an individual must allege (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact i.e., *economic injury*" and (2) "that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Id*. at 322. The California Supreme Court explained that injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 320–21.

Defendants and Plaintiff disagree as to what *Kwisket* requires in terms of injury in fact. The Jacobs Defendants cite two district court cases in the Central and Northern Districts of California—*Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) and *MAI Systems, Corp. v.* UIPS, 856 F. Supp. 538 (N.D. Cal. 1995)—to argue that allegations of diminished market share are insufficient under

*Kwikset* to satisfy the UCL's standing because they are "speculative" and are not particularized. Jacobs Mot. at 17–19. Meanwhile, Plaintiff argues that *Law Offices of Mathew Higbee v. Expungement Assistance Services*, 214 Cal. App. 4th 544 (2013), sets forth the applicable standard for UCL standing in the economic competitors context, under which diminished market share is sufficient injury in fact for purposes of standing under the UCL. Opp'n to Jacobs at 15–16.

 Although Jacobs Defendants correctly argue that some district courts have found that allegations of diminished market share or business value are insufficient to meet the UCL's standing requirements, not all district courts agree. *See Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) (holding that the plaintiff did not allege injury in fact as required under the UCL because he sought to recover "nothing more than a contingent expectancy of a payment from a third party" (internal quotations omitted)); *MAI Systems, Corp. v.* UIPS, 856 F. Supp. 538 (N.D. Cal. 1995) (granting a motion to dismiss the defendant's counterclaim under the UCL for diminished advertising value as a result of plaintiff allegedly entering into misleading contracts with customers who may have otherwise done business with the defendant); *but see Western Air Charter, Inc. v. Schembari*, 2017 WL 7240775 at *4 (C.D. Cal. December 14, 2017) (explaining that "plausible allegations that unlawful actions reduced the value of a business can satisfy the injury in fact requirement"); *Bladeroom Group Limited v. Facebook, Inc.*, 2015 WL 8028294 at *6 (N.D. Cal. December 7, 2015) (finding that the plaintiff had standing to assert a claim under the UCL based on lost market share pursuant to *Higbee*, 214 Cal. App. 4th at 548).

 Moreover, as Plaintiff contends, *Higbee*, which concluded that diminished market share and increased advertising costs were sufficient to establish injury in fact for purposes of UCL standing, is analogous here. In *Higbee*, the Court of Appeal considered "the reach of the UCL in the commercial context following the enactment of Proposition 64." *Higbee*, 214 Cal. App. 4th at 552. Specifically, the *Higbee* court discussed whether a lawyer had standing to bring a claim under the UCL against an online legal service provider based on allegations that the defendant used unlicensed persons to perform legal services, undercutting the competition and resulting in Plaintiff's lost market share, lost revenue, increased advertising costs, and diminution in law firm value. *Id*. at 548. The court held that "the lack of direct dealing between two business competitors is not necessarily fatal to UCL standing, provided the plaintiff competitor has suffered injury in fact and lost money or property as a result of the defendant competitor's unfair competition." *Id.* at 547. Thus, the *Higbee* court concluded that the plaintiff's alleged injuries—including diminished market share and increased advertising costs—were sufficient to establish injury in fact for purposes of UCL standing. *Id*. Similarly, in *Allergan, Inc. v. Athena Cosmetics, Inc.*, the Federal Circuit held that "[t]he requirement

of economic injury necessary to satisfy standing under the UCL is met with a showing of 'sales, revenue, market share, and asset value.'" *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1382 (Fed. Cir. 2011) (internal quotations omitted).

Here, Plaintiff alleges that Defendants' illegal advertisement scheme diminished the value of Plaintiff's advertisement. FAC ¶¶ 48, 49. Specifically, Plaintiff contends that "Defendants are Plaintiff's competitors in Plaintiff's geographical area and field of legal practice and utilized illegal practices in order to secure clients for which Plaintiff competes." *Id.* ¶ 19. "As a result of Defendants' illegal conduct, the value of Plaintiff's advertisements were diminished." *Id.* ¶ 49. Further, Plaintiff allege "the diversion of clients that may have otherwise chosen to hire Plaintiff." *Id.* ¶ 53. Accordingly, because some courts find that allegations of diminished market share and increased advertising costs are sufficient to establish injury in fact for purposes of UCL standing, and Plaintiff has done so, Plaintiff has alleged sufficient injury in fact for standing under the UCL. *See, e.g.*, *Higbee*, 214 Cal. App. 4th at 552.

Nonetheless, Defendants contend that Plaintiff fails to state a claim under the UCL because the only relief Plaintiff seeks is damages, which is not a remedy that is available under the UCL. Jacobs Mot. at 19–20; Reyes Mot. at 7–8. Plaintiff argues that he has requested restitution and that the Court may award "restitution to [a] third party with no contractual or statutory interest in the illicit profits generated by defendants." Opp'n to Reyes at 8.

Notably, "[i]inquires for standing and damages under the UCL 'are wholly distinct.'" *Kwikset*, 51 Cal. 4th at 320–22 ("Requiring UCL standing to be dependent on eligibility for relief would turn the remedial scheme of the UCL on its head." (internal quotation marks omitted)). Therefore, even though the Court has determined that Plaintiff has standing to assert a claim under the UCL, the Court must independently evaluate whether the relief Plaintiff seeks is available under the UCL. *Id*.

"Although the UCL targets a wide range of misconduct, its remedies are limited because UCL actions are equitable in nature." *Buckland v. Threshold Enters.*, 155 Cal. App. 4th 798, 822 (2007). "In a private unfair competition law action, the remedies are generally limited to injunctive relief and restitution." *Clark v. Superior Court*, 50 Cal. 4th 605, 610 (2010). Damages are not available under the UCL. *See Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1266 (1992) ("[D]amages are not available under [UCL] section 17203."); *see also Cacique, Inc. v. Robert Reiser & Co.*, 169 F. 3d 619, 624 (9th Cir. 1999) ("California law is clear that §§ 17200 et seq. do not authorize a suit by a private party for damages.").

An order for restitution is an order "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming [an interest] through that person." *Korea Supply Co.*, 29 Cal. 4th at 1144–45 (internal quotations omitted)). However, "disgorgement of profits allegedly obtained as a result of . . . allegedly unfair and fraudulent business practice" is not "an authorized remedy under the UCL where the profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest." *Id.* at 1152.

Here, Plaintiff asks the Court for damages resulting from Defendants' alleged misconduct in engaging in an illegal advertisement scheme, and disgorgement of all illegally obtained proceeds. *See* FAC at 11. Plaintiff does not claim that the profits were taken from Plaintiff or that Plaintiff has an "ownership interest" in the financial gains Defendants' allegedly received. *See generally* FAC; Opp'n to Jacobs; Opp'n to Reyes; *see also Korea Supply Co.* 19 Cal. 4th at 1144–45. Therefore, the damages Plaintiff seeks are not restitutionary for the purposes of the UCL. *See Korea Supply Co.* 19 Cal. 4th at 1144–45. Moreover, Plaintiff does not request any form of injunctive relief. *See FAC* at 11. Accordingly, the relief that plaintiff requests is not "an authorized remedy under the UCL." *See Korea Supply Co.*, 19 Cal. 4th at 1144–45.

Furthermore, Plaintiff fails to assert under which prong of the UCL he brings his claim. To the extent that Plaintiff's UCL claim is based on allegations of fraudulent activity, Plaintiff has failed to meet Rule 9(b)'s particularity requirement, in that he has not alleged the specific circumstances under which each of the Defendants engaged in fraudulent activity. *See generally* Compl; *see also Kearns v. Ford Motor Co.*, 567 F.3d at 1124.

As discussed above, Plaintiff cannot seek restitution. Further, Plaintiff did not seek injunctive relief in his Complaint or FAC. *See generally* Compl.; FAC. Because restitution and injunctive relief are the only remedies available under the UCL, further amendment of this claim would be futile. *See Clark*, 50 Cal. 4th at 610; *Jackson*, 353 F.3d at 758 (9th Cir. 2003).

According, the Court DISMISSES WITH PREJUDICE Plaintiff's first claim brought under the UCL.

### B.     Negligence Claim

Second, Defendants ask the Court to dismiss Plaintiff's second claim for negligence. Jacobs Mot. at 20–22; Reyes Mot. at 9. Defendants argue that Plaintiff has

failed to state a claim for negligence because: (1) Defendants did not have a duty to Plaintiff; (2) Plaintiff failed to allege that Defendants' negligence proximately resulted in injury; and (3) Plaintiff's negligence claim is grounded in fraud and Plaintiff has failed to meet the heightened pleading standard for fraud. Jacobs Mot. at 20–22; Reyes Mot. at 9. In response, Plaintiff argues that all Defendants owed a duty of care to the public not to commit insurance fraud. Opp'n to Jacobs at 16; Opp'n to Reyes at 9. Specifically, Plaintiff argues that the duty is imposed by California Business & Professions Code § 6152, Insurance Code § 750, Labor Code § 3215, and Penal Code §§ 549, 550(a)(1), and 550(b)(3). Opp'n to Jacobs at 16; Opp'n to Reyes at 9. Plaintiff further argues that the FAC sufficiently alleges injury as a proximate cause of Defendant's actions, because the FAC alleges that "Defendants each participated in the criminal scheme dating back to 2005, and that as a result, [Plaintiff] suffered damages" including "diminished value of [Plaintiff]'s advertisements" and a "drop in clients." Opp'n to Jacobs at 16; Opp'n to Reyes at 9; *see* FAC ¶ 38. Finally, Plaintiff contends that his negligence claim is pled with sufficient particularity, as "Defendants are on notice of how the criminal scheme worked" and of "the name of each attorney involved in the criminal conspiracy." Opp'n to Jacobs at 16; Opp'n to Reyes at 9.

To state a claim for negligence, Plaintiff must allege that there is "'a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury.'" *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016) (quoting *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014)).

As an initial matter, Plaintiff fails to allege in his FAC that Defendants had a legal duty to Plaintiff—an essential element of the claim. *See Kenser,* 1 Cal. 5th at 1142. Therefore, on those grounds alone Plaintiff has failed to state a claim for negligence. *See Twombly*, 550 U.S. at 555.

In his Oppositions, however, Plaintiff claims that Defendants owed Plaintiff a "duty of care not to commit insurance fraud." Opp'n to Jacobs at 16–17; Opp'n to Reyes at 9. Plaintiff appears to be arguing that Defendants' actions were negligent per se in that they allegedly violated a number of California laws. Opp'n to Jacobs at 16–17; Opp'n to Reyes at 9. Plaintiff cites California Business & Professions Code § 6152, Insurance Code § 750, Labor Code § 3215, and Penal Code §§ 549, 550(a)(1), and 550(b)(3) to argue that Defendants owe a duty of care to the public not to commit insurance fraud. Opp'n to Jacobs at 16–17; Opp'n to Reyes at 9.

Under California law, a claim for negligence per se requires a showing that (1) a defendant violated a statute, ordinance, or regulation; (2) the violation proximately

caused injury; (3) the injury resulted from an occurrence that the enactment of the law was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was intended to protect. *Safari Club International v. Rudolph*, 862 F. 3d 1113, 1126 (9th Cir. 2017).

However, Plaintiff fails to allege how Defendants have violated the provisions of California law that he cites, or which laws each of the individual Defendants violated. *See generally* FAC; *see also Twombly*, 550 U.S. at 555.

Furthermore, Plaintiff fails to demonstrate how his injury was proximately caused by Defendants' actions. *See generally* FAC. Plaintiff's allegations of diminished advertising value and loss of potential customers are too attenuated to meet the directness requirement for proximate cause, for the reasons discussed below, in regards to Plaintiff's third claim for civil RICO. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–62 (2006).

Moreover, Plaintiff fails to show that he was "a member of the class of persons the statute[s] w[ere] intended to protect" or that the Plaintiff's alleged injury "resulted from an occurrence the enactment was designed to prevent." *See Safari Club International*, 862 F. 3d at 1126. For example, Plaintiff does not argue that the California law provisions that cites were enacted to protect economic competitors like himself or that the provisions were enacted to prevent economic harm to business competitors. *See generally* Opp'n to Jacobs; Opp'n to Reyes. Several of the provisions Plaintiff cites in support of his negligence per se argument appear to have been enacted to protect clients from lawyer overreaching. For example, California Business and Professions Code § 6152 makes it unlawful to "act as a runner or capper for any attorneys or to solicit any business for any attorneys" in certain locations. Cal. Bus. & Prof. Code § 6152. Similarly, California Insurance Code § 750 makes it unlawful to receive any form of compensation or inducement for the "referral or procurement of clients [or] cases." Cal. Ins. Code. § 750. Here, however, Plaintiff is not a client who was harassed or mislead by the allegedly illegal advertisements, but rather an economic competitor who alleges that his advertisements decreased in value and that he lost clients as a result of Defendants' alleged violations of the law. Therefore, Plaintiff does not show that the cited California law provisions were intended to protect individuals like Plaintiff. *See Safari Club International*, 862 F. 3d at 1126.

Finally, as a general matter, individuals do not owe a duty of care to third parties to prevent purely economic losses. *Biakanja v. Irving*, 40 Cal. 2d 647, 650 (1958). Here, Plaintiff is a third party claiming purely economic loss as a result of Defendants' allegedly illegal advertisements to their clients. Plaintiff does not argue that this case is

an exception to this general rule. *See Biakanja*, 40 Cal. 2d at 650 (1958); *see generally* Opp'n to Jacobs; Opp'n to Reyes. Due to the foregoing deficiencies, Plaintiff fails to state a claim for negligence.

Accordingly, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's second claim for negligence.

### C.     Civil RICO Claim

Third, Defendants ask the Court to dismiss Plaintiffs third claim for Civil Racketeering pursuant to 18 U.S.C. § 1961 *et. seq* ("civil RICO"). Defendants argue that Plaintiff fails to state a claim for civil RICO because Plaintiff has failed to sufficiently allege the following necessary elements: (1) the existence of an 'enterprise' within the meaning of 18 U.S.C. § 1961; (2) that Defendants "conducted or participated" in the affairs of an enterprise; (3) the elements of the alleged racketeering acts of mail and wire fraud with particularity as required by Rule 9(b) or even 8(a); (4) a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961; (5) injury to a business or property interest; and (6) proximate cause. Jacobs Mot. at 7–14; Reyes Mot. at 2–5.

In response, Plaintiff argues that his civil RICO claim is properly pled and set forth in the sections of the FAC that lay out the facts of the case, and in the claims in the OCDA Complaint. Opp'n to Jacobs at 7–14. The Court will address Defendant's arguments in turn, beginning with proximate cause.

The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides a private right of action for "[a]ny person injured in his business or property" by a RICO violation. 18 U.S.C. § 1964(c). RICO provides for both criminal and civil liability. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007); 18 U.S.C. §§ 1961–68. Civil RICO provides for treble damages. 18 U.S.C. § 1964(c). However, "Congress enacted RICO 'to combat organized crime, not to provide a federal cause of action and treble damages'" for every tort plaintiff. *Chaset v. Fller/Skybox Intern., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (quoting *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783 (9th Cir. 1992) *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005)). To state a claim for a civil violation of the RICO Act, a plaintiff must plead that the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Chaset*, 300 F.3d at 1086; 18 U.S.C. §§ 1962(c), 1964(c); *see also Odom*, 486 F.3d at 547.

　　　　Defendants ask the Court to dismiss Plaintiff's civil RICO claim because they argue that Plaintiff has failed to demonstrate that his alleged injuries were proximately caused by the Defendants' actions, and therefore, Plaintiff lacks standing to bring a civil RICO claim. Jacobs Mot. at 14–15; Reyes Mot. at 4–5. In response, Plaintiff argues that he has sufficiently alleged proximate cause because he has alleged that he practiced in the same "geographic and practice area," and assuming "there is a finite pool of potential workers compensation clients, [Plaintiff]'s ability to practice law [was] diminished. Opp'n to Jacobs at 14; Opp'n to Reyes at 6–7.

　　　　To satisfy RICO's standing requirement a plaintiff must allege that his or her injury was proximately caused by the defendant's RICO violation. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 267–68 (1992). In *Holmes*, "the Supreme Court held that Congress intended the statute conferring a private right of action under RICO, 18 U.S.C. § 1964(c), to include a proximate causation requirement because the language in the RICO statute mirrored that of the civil-action portions of the federal antitrust laws." *Sybersound Records, Inc. v. UAV Corp.*, 517 F. 3d 1137 (9th Cir. 2008) (citing *Holmes*, 503 U.S. at 267–68). In 2006, the Supreme Court clarified the proximate causation requirement for civil RICO claims, explaining that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to plaintiff's injuries." *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–62. In *Anza*, the defendant allegedly failed to charge sales tax to its customers paying in cash and submitted fraudulent tax returns, and the plaintiff argued that these practices allowed the defendant to undercut the plaintiff's prices. *Id.* The plaintiff brought a civil RICO claim based on its allegedly diminished profits and lost customers, but the Supreme Court held that the harm was too attenuated to meet the directness requirement for proximate cause. *Id.*

　　　　The *Anza* Court considered several factors in determining that the alleged harm was too attenuated to satisfy the proximate cause requirement. *Id.* First, the Court explained that the decrease in the defendant's prices could have been a result of more than just the act of defrauding the tax authority. *Id.* at 458. Specifically, the Court explained that the defendant's decreased prices could have also been the result of a decision that "additional sales would justify a smaller profit margin." *Id.* Moreover, the Court noted that the plaintiff's "lost sales could have resulted from factors other than the [defendant's] alleged acts of fraud" and noted that "[b]usinesses lose and gain customers for many reasons. *Id.* at 459. Finally, the Court explained that it is relevant to consider "the difficulty than can arise when a court attempts to ascertain the damages caused by some remote action." *Id.* at 458. The Court further explained,

> A court considering the claim would need to begin by calculating the portion of [the defendant's] price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of [the plaintiff's] lost sales attributable to the relevant part of the price drop. The element of proximate causation recognized in *Holmes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws.

*Id*. at 459–60. The Supreme Court clearly explained that the requirement for proximate cause is an important limiting factor in RICO standing, and this requirement ensures that courts are not required to make excessively speculative calculations about indirect injuries, especially in the context for claims brought by economic competitors. *Id*.

Here, Plaintiff's alleged injury—the devaluation of his advertisement and loss of potential customers—is too attenuated to satisfy the civil RICO proximate cause requirement. *See Anza*, 547 U.S. at 457–62. As in *Anza*, Plaintiff's alleged injury "could have resulted from factors other than" Defendants' allegedly illegal advertisement scheme. For example, as the Jacobs Defendants contend,

> Numerous factors could have contributed to Plaintiff's alleged injury, including the differing geographic markets in which Plaintiff and Defendants provide legal services; Plaintiff's lack of experience; the quality of Plaintiff's legal services; the type and targeting of Plaintiff's advertisements; Plaintiff's fee structure; customer satisfaction and referrals; the state of the economy; demographic factors; and countless other causes.

Jacobs Mot. at 15. Furthermore, as in *Anza*, the calculations that the Court would be required to engage in to determine Plaintiff's actual damages would be speculative and exceedingly complex with respect to the portion of Plaintiff's injury that is attributable to Defendants' alleged racketeering activity. *See Anza*, 547 U.S. at 459–60. Therefore, Plaintiff has failed to allege proximate cause, a requirement to satisfy civil RICO's standing requirements. *See Holmes*, 503 U.S. at 267–68.

Accordingly, Plaintiff lacks standing to bring a civil RICO claim under 18 U.S.C. § 1964(c). *See id.* Since Plaintiff lacks standing, the Court need not address whether Plaintiff has otherwise sufficiently stated all the elements of his RICO claim.

In addition, because Plaintiff is unable to allege proximate cause, as required to have standing to bring a civil RICO claim, further amendment of this claim would be futile. *See Jackson*, 353 F.3d at 758; *Holmes*, 503 U.S. at 267–68.

Accordingly the Court DISMISSES WITH PREJUDICE Plaintiff's third claim brought under civil RICO.

### D.      Remand

When Defendants removed this case, Plaintiff's civil RICO claim fell within this Court's federal question jurisdiction, and the Court had supplemental jurisdiction over Plaintiff's negligence and UCL state-law claims. *See* Not. Rem. ¶¶ 13–15. However, the Court has dismissed Plaintiff's civil RICO and UCL claims with prejudice, and dismissed Plaintiff's negligence claim without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's sole remaining claim for negligence.

Accordingly, the Court sua sponte REMANDS this case for lack of subject matter jurisdiction.

### IV.      Disposition

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss.

The Court DISMISSES WITH PREJUDICE Plaintiff's claims for (1) violations of the UCL; and (2) civil RICO. The Court DISMISSES WITHOUT PREJUDICE Plaintiff's negligence claim.

Further, the Court REMANDS this case to the Superior Court of California, County of Los Angeles.

The Clerk shall serve this minute order on the parties.